**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


KAREEM ARMSTRONG,        )

                             )        Civil Action No. 11 - 1074

             Plaintiff,     )

                             )        District Judge Mark R. Hornak

                v.             )        Chief Magistrate Judge Lisa Pupo Lenihan

                             )

BRIAN COLEMAN and DARLENE     )

LINDERMAN,              )        ECF No. 41

                             )

               Defendants.


## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 41) be granted.

## II.    REPORT

### A.  Procedural History

Plaintiff, Kareem Armstrong, is a state prisoner who is currently incarcerated at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania.  He initiated this action in August 2011, pursuant to 42 U.S.C. § 1983.  In his amended complaint, Plaintiff alleged that Defendants, employees at the State Correctional Institution at Fayette ("SCI-Fayette"), violated his rights under the First and Fourteenth Amendments of the United States Constitution.  (ECF No. 20.)  Defendants moved to dismiss Plaintiff's claims, and on April 26, 2012, this Court granted in part and denied in part Defendants' motion.  (ECF No. 27.)  As a result, Plaintiff's access to courts and due process claims were dismissed with prejudice.  The motion was denied

with respect to Plaintiff's freedom of speech claim. Defendants have now moved for summary

judgment (ECF Nos. 41-44) and Plaintiff has filed a response in opposition to their motion (ECF

Nos. 49-51). The motion is now ripe for review.

### B. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, the record indicates that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment

may be granted against a party who fails to adduce facts sufficient to establish the existence of

any element to that party's case and for which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of

identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of

material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582

(3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific

facts showing that there is a genuine issue for trial" or the factual record will be taken as

presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec.

Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski,

922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having

reviewed the evidence with this standard in mind, concludes that "the evidence is merely

colorable . . . or is not significantly probative," then summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form.  *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### C.  Factual Background

Plaintiff's claim is premised on the repeated opening of his correspondence from another inmate, which he deems was "legal" mail, outside of his presence in violation of the First Amendment.  With respect to the handling of inmate mail, the Pennsylvania Department of Corrections (hereinafter referred to as the "DOC") has implemented a written policy, which is set out in DC-ADM 803.  *See* ECF No. 44-3 at 10-36 (Defendants' Exh. 17, Declaration of Darlene Linderman, Attach. 2, DC-ADM 803, Inmate Mail and Incoming Publications).  This policy also establishes security protocols for all incoming and outgoing inmate correspondence.  Id.  The version of DC-ADM 803 during the relevant time period herein was issued on April 18, 2008, and states, in pertinent part, as follows:

Section 1 – General Procedures

A.  Mail Privileges

    \* \* \*

   3.  An inmate may not:

      a.    correspond with another inmate, former inmate, parolee, probationer, co-defendant;

      \* \* \*

   4.    When an inmate wishes to correspond with an inmate at another facility (whether under the Department's jurisdiction or the jurisdiction of any other state, county, or federal agency or contractor) or a juvenile in a detention center:

a.    neither inmate can be in disciplinary custody status;

b.    each inmate must submit a request to the counselor at his/her current facility; the request must include the name and number of the other inmate, the relationship between them, and the name of the facility where the other inmate is located;

c.    the counselor will verify the relationship between the inmates, and prepare and circulate a DC-46, Vote Sheet;

d.    if approved, the counselor will prepare a Correspondence Between Inmates Form (Attachment 1-A), obtain the Facility Manager/designee's signature, and forward it to the Facility Manager/designee of the other facility;

e.    the Facility Manager at the recipient inmate's facility shall review the Correspondence Between Inmates Form and determine whether the approve the request to correspond;

f.    if both Facility Managers approve the request, a copy of the Correspondence Between Inmates Form shall be placed in the DC-14, a notation shall be made in the automated Inmate Cumulative Adjustment Record (ICAR), and the mailroom supervisors at both facilities shall be notified;

g.    the inmates must refrain from mentioning facility security, staff or inmates in their communication;

h.    the facility may read both incoming and outgoing correspondence between the inmates, to ensure compliance with the conditions of these procedures; and

i.    permission to correspond with an inmate at a facility under the Department's jurisdiction or the jurisdiction of any other state, county, or federal agency or contractor or a juvenile in a detention center may be withdrawn at any time.

*  *  *

B.  Privileged Correspondence

*  *  *

2. Incoming Privileged Correspondence: Mail from a court or an inmate's attorney will be opened for the first time in the presence of the inmate and inspected for contraband, but not read.

    a. Mail from a court or an attorney will be opened for the first time in the presence of the inmate. The mail will be inspected for contraband, but will not be read.

    b. If upon opening the envelope in the presence of the inmate, the staff member without reading the contents, notices that the contents contain absolutely no legal material (e.g., contains only a publication readily available to the public with no notations from counsel), the staff member shall issue the contents to the inmate and complete a DC-121, Part 3, Employee Report of Incident, in accordance with Department policy 6.3.1, "Facility Security" for submission to the Shift Commander and the Facility Manager/designee. The report shall include: the contents that were deemed not to be legal material; the name and Department number of the inmate who received the mail; and the name and address of the person who sent the mail. The Facility Manager/designee shall forward a copy of the staff member's report to the Office of Chief Counsel and the Bureau of Standards and Security for review and tracking.

    c. The Office of Chief Counsel will issue a control number to a court or attorney as provided in 37 Pa. Code § 93.2; however mail from a court or attorney will be handled as set forth in paragraphs (a) and (b) above even if a control number does not appear on the envelope.

    * * *

Section 2 – Security Procedures

A. Incoming Correspondence

1. The facility's mailroom staff shall open and inspect all incoming correspondence unless it is privileged correspondence, which shall be processed as set forth in Section 1.B.2. above and opened in the presence of the inmate. Mailroom staff will not read incoming correspondence unless authorized to do so under sub-paragraph c. below.

    * * *

ECF No. 44-3 at 14-17, 20 (Defendants' Exh. 17, Declaration of Darlene Linderman, Attach. 2, DC-ADM 803, Inmate Mail and Incoming Publications). By policy, any mail designated as privileged mail is not processed by staff and is only opened in the inmate's presence. *See* ECF No. 44-3 at 3, ¶ 5 (Defendants' Exh. 17, Declaration of Darlene Linderman).

While incarcerated at SCI-Huntingdon in June of 2008, Plaintiff was housed in the same housing unit as William Victor, FK-7293 ("Victor"). *See* ECF No. 7 at ¶ 9 (Plaintiff's original complaint); *see also* ECF No. 44-1 at 4 (Defendants' Exh. 1, Inmate Query – Cell History, ARMSTRONG, FC1437) and ECF No. 44-1 at 9 (Defendants' Exh. 2, Inmate Query – Cell History, VICTOR, FK7293). Victor subsequently filed several lawsuits concerning incidents and events that occurred at SCI-Huntingdon, including <u>Victor v. Lawler, *et al*</u>. No. 3:08-cv-1374 filed in the United States District Court for the Middle District of Pennsylvania. *See* ECF No. 7 at ¶ 9 (Plaintiff's original complaint). In that lawsuit, Victor requested a court order allowing him to correspond with several inmates he had identified as witnesses, including Plaintiff. *See* <u>Victor</u>, No. 3:08-cv-1374 at ECF Nos. 38-39, 77, 190-191. The initial request was made in a motion filed on February 19, 2009. <u>Id</u>. at ECF No. 38. This motion, along with several others, was referred to Magistrate Judge Smyser for disposition. As recounted by Judge Smyser

> On February 19, 2009, the plaintiff filed a motion for relief, and brief in support of that motion, requesting that the Court issue an order directing the defendants to allow correspondence between himself and other prisoners the plaintiff alleges witnessed the events that form the basis of his claims. (Docs. 38, 39). The plaintiff also requests that the Court issue an order allowing him to communicate with three new inmate witnesses: Michael Rivera, David Cummings and Kareem Armstrong.

> The defendants filed a brief in opposition to the plaintiff's motion on March 3, 2009. (Doc 43). The defendants assert that they do not oppose the plaintiff's request to communicate with the inmates he has been approved to correspond with, as well as the three new inmates mentioned in the plaintiff's motion. However, the defendants request that the plaintiff make an offer of proof as to the

> relevant knowledge possessed by the three new alleged inmate witnesses
> mentioned above. The defendants argue that the plaintiff should be permitted to
> communicate with inmate witnesses, but must be subject to the reasonable
> conditions imposed by the prison for safety reasons. The defendants point out
> that the United States Supreme Court has held that a total prohibition on inmate-
> to-inmate correspondence between institutions is justifiable based on safety
> concerns. Turner v. Safley, 482 U.S. 78, 91 (1987).
>
> We do not interpret the plaintiff's motion as a request for unsupervised
> communication with other inmates. We conclude that the plaintiff has a
> legitimate need to communicate with potential witnesses in this case and should
> be allowed to communicate with the three individuals named in the plaintiff's
> motion, as well as the individuals with whom the plaintiff previously requested to
> communicate. Accordingly, we will grant the plaintiff's motion (Doc. 38)
> regarding communication with previously named inmate witnesses, in addition to
> the three new inmate witnesses named in the plaintiff's current motion. The
> Department of Corrections is permitted to monitor those communications
> according to normal security procedures.

Victor, No. 3:08-cv-1374 at ECF No. 91; *see also* ECF No. 44-1 at 14-21 (Defendants' Exh. 3,

Order of Court, May 26, 2009). As a result, Victor was granted permission to correspond with

his inmate witnesses, including Plaintiff, "subject to monitoring according to normal security

procedures by the Department of Corrections." Id.

Victor also filed a Motion for Relief which, *inter alia*, requested that "all such

correspondence [with inmate witnesses] be treated as legal mail as I litigate my claims for [this]

case." Victor, No. 3:08-cv-1374 at ECF No. 77; *see also* ECF No. 44-1 at 23-24 (Defendants'

Exh. 4, Motion for Relief). That motion, however, was subsequently denied by Magistrate Judge

Carlson on September 24, 2009.[1] Victor, No. 3:08-cv-1374 at ECF No. 140; *see also* ECF No.

44-1 at 26-37 (Defendants' Exh. 5, Order of Court, September 24, 2009). In pertinent part, the

Order reads as follows:

---

[1] The case was reassigned to Magistrate Judge Carlson on or about August 24, 2009. *See* Victor, No. 3:08-cv-1374 at ECF No. 133.

2. Plaintiff's "motion for relief" (Doc. No. 77), in which he appears to request entry of an order enjoining Defendants and other prison officials from regulating or placing limits on his correspondence to other inmates, is DENIED without prejudice. Plaintiff has not demonstrated that prison officials have violated any of this Court's orders or that the limitations placed on Plaintiff's communications with other inmates regarding this case is unreasonable.

<u>Id</u>. Victor again sought permission to correspond with various potential witnesses in his case by another Motion for Relief and accompanying Brief filed on or about February 16, 2012. <u>Victor</u>, No. 3:08-cv-1374 at ECF No. 190-91; *see also* ECF No. 44-1 at 39-41 (Defendants' Exh. 6, Motion for Relief) and 43-44 (Defendants' Exh. 7, Brief in Support of Motion for Relief). In a Memorandum Opinion and Order issued on March 4, 2010, Judge Carlson noted that "[s]uch requests are not new to this litigation. Quite the contrary, Victor has filed numerous Motions for Relief of this type in the case of *Victor and Bailey v. Lawler, et al.*, No. 07-2058, seeking to communicate with Plaintiff Bailey and various inmate witnesses. Judge Smyser previously ordered that Victor be permitted to communicate by mail with these inmate witnesses subject to monitoring by the DOC and normal security procedures." <u>Victor</u>, No. 3:08-cv-1374 at ECF No. 202; *see also* ECF No. 44-1 at 46-49 (Defendants' Exh. 8, Memorandum Opinion and Order, March 4, 2010). In ruling on the motion, Judge Carlson stated that,

[c]onsistent with the prior rulings of Judge Smyser, we do not interpret the plaintiff's motion as a request for unsupervised communication with other inmates. We conclude that the plaintiff has a legitimate need to communicate with potential witnesses in this case and should be allowed to communicate with the individuals named in the plaintiff's latest motion, as well as the individuals with whom the plaintiff previously requested to communicate. Accordingly, we will grant the plaintiff's motion (Doc. 190) regarding communication with previously named inmate witnesses, in addition to the newly named inmate witnesses identified in the plaintiff's current motion.

Therefore, in accordance with the prior orders entered in this case, IT IS ORDERED that the Motion for Relief (Doc. 190) is GRANTED and the defendants are directed to permit the plaintiff to correspond once a month during

the pendency of this litigation with the following inmate-witnesses: . . . Kareem Armstrong, FC-1437, . . . The Department of Corrections is permitted to monitor those communications according to normal security procedures.

<u>Victor</u>, No. 3:08-cv-1374 at ECF No. 202; *see also* ECF No. 44-1 at 48-49 (Defendants' Exh. 8, Memorandum Opinion and Order, March 4, 2010).

In early 2010, Victor was housed at SCI-Fayette while Plaintiff was housed at SCI-Dallas. *See* ECF No. 44-1 at 4, 10-11 (Defendants' Exhs. 1-2, Inmate Query – Cell History VICTOR and ARMSTRONG). Therefore, Superintendent Defendant Coleman at SCI-Fayette sent correspondence to Superintendent Jerome Walsh at SCI-Dallas seeking approval for Victor to correspond with Plaintiff. ECF No. 7-1 at 2 (Plaintiff's Exh. 1 to original complaint). Superintendent Walsh indicated his approval by signing the document on February 17, 2010. <u>Id</u>.

On August 3, 2010, Plaintiff was transferred from SCI-Dallas to SCI-Fayette. *See* ECF No. 7 at ¶ 10; *see also* ECF No. 44-1 at 4 (Defendants' Exh. 1, Inmate Query – Cell History ARMSTRONG). By that time, however, Victor had already been transferred from SCI-Fayette to SCI-Coal Township. *See* ECF No. 44-1 at 11 (Defendants' Exh. 2, Inmate Query – Cell History VICTOR). Superintendent David Varano at SCI-Coal Township sent correspondence dated September 13, 2010, to Defendant Superintendent Coleman advising that inmate-to-inmate correspondence between Victor and Plaintiff had been approved by the court. *See* ECF No. 7-6 at 2 (Plaintiff's Exh. 6 to original complaint). Thereafter, notice was sent to Defendant Linderman via email on September 20, 2010, indicating that inmate-to-inmate correspondence between Victor and Plaintiff had been approved. *See* ECF No. 44-2 at 44 (Defendants' Exh. 16, Benci Email, September 20, 2010). The email stated in pertinent part that

[t]oday in the mail, we received a letter from Supt. Varano (Coal Township) regarding William Victor v. R.M. Lawler, et al. No. 3:08-CV-01374 lawsuit. Superintendent Varano received a Memorandum Opinion and Order filed on

> March 4, 2010 by United States Magistrate Judge Martin C. Carlson specifying correspondence privileges of William Victor #FK-7293 and Kareem Armstrong #FC-1437, who is a potential witness in above case.
>
> Permission is granted for Victor to correspond once a month during the pendency of this litigation. The DOC is permitted to monitor those communications according to normal security procedures. We are to provide notification to our mailroom of this approval to correspond between inmates.

ECF No. 44-2 at 44 (Defendants' Exh. 16, Benci Email, September 20, 2010). DOC records reflect that Plaintiff subsequently received correspondence from Victor on August 19, 2010; October 4, 2010; November 17, 2010; February 4, 2011; March 8, 2011; July 28, 2011; September 21, 2011; November 7, 2011; December 27, 2011; February 21, 2012 and July 20, 2012. *See* ECF No. 44-3 at 39-40 (Defendants' Exh. 17, Declaration of Darlene Linderman Attach. 3, Victor Mail Log).

Plaintiff claims that, on August 20, 2010, he received "legal mail" from Victor that was opened outside of his presence. *See* ECF No. 7 at ¶ 10 (Plaintiff's original complaint). On or about August 24, 2010, Plaintiff filed an Inmate Grievance claiming interference with his legal mail that contained "documents of a Judgment given by the courts." ECF No. 44-2 at 2 (Defendants' Exh. 9, Inmate Grievance No. 332392). In the initial response, the Grievance Officer stated that an investigation revealed

> there is no documentation that [Plaintiff] received legal mail on or around 8-20-2010. Actually, I discovered that you have not received any legal mail since housed in the RHU. This discovery was reinforced by mailroom staff when I was informed that according to the legal mail log you have not received any legal mail since your arrival at SCI Fayette on 8-3-2010. Based on the fact that the mailroom confirmed that you did not receive any mail that meets the criteria of "legal mail" set forth by the DC-ADM 803 on or around 8-20-2010, your claims that RHU Officers mishandled your legal mail has no merit.

Id. at 3. Plaintiff filed an appeal wherein he indicated for the first time that the legal mail which was the subject of the grievance was "legal mail from William Victor #FK7293." Id. at 4. In his response, Defendant Coleman wrote

> [n]o where in your grievance do you mention that the legal mail you are grieving was from William Victor. You did not have approval to correspond with William Victor until 9/20/10. Since you did not provide Lt. Bitner with the envelope, and neither the housing unit log or mailroom log indicate that you received legal mail on 8/20/10, there is no proof to substantiate your allegations.

Id. at 5-6. Plaintiff's appeal to the Secretary's Office of Inmate Grievances and Appeals was dismissed at the final level because it "was not submitted timely." Id. at 7.

During the grievance review process for Inmate Grievance No. 332392, Plaintiff filed another Inmate Grievance specifically complaining that the mail he received from Victor on August 20, 2010, should not have been opened outside of his presence "because it's deem[sic] 'LEGAL MAIL' not personal mail." ECF No. 44-2 at 9 (Defendants' Exh. 10, Inmate Grievance No. 334142). The grievance was rejected because the issues presented had already been reviewed and previously addressed in Inmate Grievance No. 332392. Id. at 10. Plaintiff appealed, id. at 11, but his appeal was dismissed by Defendant Coleman because Plaintiff had already received a response to this issue via Inmate Grievance No. 332392, id. at 12. The Secretary's Office dismissed Plaintiff's final appeal as untimely. Id. at 13.

Plaintiff also claims that the mailroom opened his "privilege[sic] incoming legal mail" from Victor outside of his presence on October 5, 2010. ECF No. 7 at ¶ 19 (Plaintiff's original complaint). He once again submitted an Inmate Grievance this time regarding this instance. ECF No. 44-2 at 15 (Defendants' Exh. 11, Inmate Grievance No. 338558). Plaintiff stated that he would continue to grieve the issue "until the institution honor[ed] [his] correspondence as legal mail." Id. In response, the Grievance Officer stated:

> The writing privileges that you have with Inmate Victor are unique and out of the ordinary. During the investigation of your grievance it was discovered that the mailroom staff was not properly instructed on the handling of this correspondence and inadvertently opened the mail and searched it for contraband as they are required to do by policy. This was an honest mistake and not done intentionally. I have instructed the mailroom staff that your monthly letter from Inmate Victor during the pendency of the case William Victor v. R.M. Lawler, et al. should be treated as legal mail.

Id. at 16. Plaintiff filed an appeal, id. at 17, and Defendant Coleman responded on November 9, 2010, stating as follows:

> Two inmates have correspondence privileges and the mailroom treated your mail as such. They were not advised that Victor is acting pro se and per direction of our legal office we must treat your correspondence as legal. Mailroom staff was advised of this unique circumstance and will treat your monthly correspondence with Victor as legal. Your requested relief is denied.

Id. at 18. This response was upheld by the Secretary's Office in an appeal decision entered on December 7, 2010. Id. at 19. In the decision, it was noted that

> . . . . A review of the record reveals that the mailroom staff opened your mail in error. The record reflects that the mailroom staff were instructed to treat this mailing as legal in the future. When considering the sheer amount of mailings that are sent and received, mistakes are inevitably going to occur. There is no evidence of malice or intentional wrongdoing. Any request for monetary relief is denied.

Id.

On November 12, 2010, Defendant Linderman received an Inmate Request to Staff Member from Plaintiff. ECF No. 44-3 at 42 (Defendants' Exh. 17, Declaration of Darlene Linderman Attch. 4, Inmate Request to Staff Member, November 12, 2010). Plaintiff requested to know, *inter alia*, the name of the mailroom supervisor and when she received notice that his correspondence from Victor was considered to be legal mail. Id. In her response, Defendant Linderman advised Plaintiff that she was the mailroom supervisor and that it was her understanding that Plaintiff's mail with Victor was "not considered legal mail." Id. Defendant

Linderman states that prior to sending this response, she did not recall ever being advised by the Business Manager at SCI-Fayette that Plaintiff's correspondence from Victor was to be treated as privileged mail or legal mail. ECF No. 44-3 at 4, ¶¶ 14-15 (Defendants' Exh. 17, Declaration of Darlene Linderman).

Plaintiff claims that his legal mail from Victor was again opened outside of his presence on November 17, 2010. ECF No. 7 at ¶ 24 (Plaintiff's original complaint). Plaintiff filed another Inmate Grievance, this time noting that this was the third time that his correspondence from Victor had been opened outside of his presence. ECF No. 44-2 at 21 (Defendants' Exh. 12, Inmate Grievance No. 343921). In response, the Grievance Officer issued the following Findings of Fact:

> Sgt. Sheetz and I met with you on November 24, 2010. I explained to you that this is an unusual circumstance that you can correspond with another inmate and we cannot open it and inspect it. The mailroom has been informed and it should not occur again. After our discussion you decided to accept the letter and you signed the confiscated items receipt that you have received the letter. You also received your copy of the grievance that you had provided to Sgt. Vernon as proof that your letter should have been treated as legal.

Id. at 23. Plaintiff appealed to final review, id. at 24-25, and the Secretary's Office issued its decision on January 3, 2011, stating as follows:

> This office is in receipt of your appeal to the above grievance in which you claim that your mail from William Victor was opened outside of your presence. You seek monetary relief. A review of the record reveals that the mailroom staff opened your mail in error. The record reflects that the mailroom staff were instructed to treat this mailing as legal in the future. Just as in grievance number 338558, when considering the sheer amount of mailings that are sent and received, mistakes are inevitably going to occur. There is no evidence of malice or intentional wrongdoing. There is nothing further to add to your initial review response. This is a very unusual circumstance for mailroom staff to monitor and the issue was again addressed with those staff. Any request for monetary relief is denied.

Id. at 26.

On November 23, 2010, Defendant Linderman received an email indicating that Plaintiff's correspondence from Victor must be treated as legal mail and opened in front of him. *See* ECF No. 44-3 at 44 (Defendants' Exh. 17, Declaration of Darlene Linderman, Attach. 5, Lockett Email, November 23, 2010). Since November 23, 2010, Plaintiff's correspondence from Victor was treated as such and opened in Plaintiff's presence except for one occasion that occurred on July 28, 2011. *See* ECF No. 44-3 at 5 ¶¶ 18-19 (Defendants' Exh. 17, Declaration of Darlene Linderman). The following day, Plaintiff submitted an Inmate Request to Defendant Linderman explaining that he had received a letter from Victor that had been opened outside of his presence, which he then refused to accept. ECF No. 44-2 at 30 (Defendants' Exh. 13, Inmate Request to Staff Member, July 29, 2011). He inquired as to what became of the correspondence. Id. In her response, Linderman stated that

> [t]he letter that you refused was sent back to Victor. Marked Return to Sender on the envelope, taped it closed & put it back in the mail. It wasn't confiscated; you refused it. It was handled the same as any other mail refused by inmates.
>
> The problem is your mail looks the same as other hundreds of letters we receive. It might be a help if you & Mr. Victor would write "Court Ordered Legal Mail" on the envelope. We really are not opening this mail on purpose.

Id.

Plaintiff submitted Inmate Grievance No. 374899 on July 28, 2011. ECF No. 44-2 at 33 (Defendants' Exh. 14, Inmate Grievance No. 374899). Plaintiff complained that Defendant Linderman "deliberately and intentionally" opened his "incoming legal mail outside of his presence from William Victor." Id. He sought a copy of the envelope that he refused, a confiscated items receipt and monetary relief. Id. This grievance was rejected by the Facility Grievance Coordinator and Plaintiff thereafter withdrew it to refile. *See* id. at 35-36. Plaintiff filed Inmate Grievance No. 375551 on August 2, 2011. ECF No. 44-2 at 38 (Defendants' Exh.

15, Inmate Grievance No. 375551). The grievance was denied and the initial review response

stated:

> After checking with the mailroom, everyone in the mailroom was told the mail
> between Armstrong and inmate Victor was to be treated as legal mail. The
> problem is that the two inmates need to mark on the outside "Legal Mail between
> Inmates" so the staff here will not open it. If it is not visibly marked it could get
> opened again in error. It must be clearly marked as legal mail not to get opened
> as hundreds of letters get reviewed each day.

Id. at 39. Plaintiff appealed, id. at 40, and Defendant Coleman found as follows:

> The mailroom staff opened your letter from Inmate Victor in error. The privilege
> you have to correspond with Inmate Victor is a unique one. Letters from inmate
> to another are opened on a regular basis. Mailroom Staff will be once against
> reminded Inmate Victor is acting Pro se in this case and the mail from him should
> be considered legal.
>
> The reason you did not receive a CIR for the letter in question is since you refused
> to accept the piece of mail it was returned to sender on 8-3-2011.
>
> Based on the fact the above information I am upholding your appeal in part and
> denying it in part.

Id. at 41. In response to Plaintiff's final appeal, the Secretary's Office stated:

> You state in your grievance that privileged correspondence was opened that was
> sent to you by Inmate Victor. Mr. Oppman conducted an investigation into your
> allegations. The record reflects that the envelope was not marked "legal" and due
> to the amount of mail that is received, it was accidentally opened. The record
> reflects that you refused to accept this piece of mail; therefore, CO Renninger
> took the mail and returned it to the mailroom. The mailroom then "returned it to
> sender." . . . Staff have once again been reminded of the importance not to open
> privileged mail. It is suggested that when you are corresponding with Mr. Victor,
> that he mark "legal" on the envelope in an attempt to notify mailroom staff that it
> is legal mail and should not be opened outside your presence. Your grievance is
> upheld in part that your mail was opened and should not have been and denied in
> your request for monetary compensation. It is believed that you[r] mail was not
> opened intentionally or to cause you any harm.

Id. at 42.

> Plaintiff initiated this action on August 19, 2011.

## D. Discussion

Plaintiff claims that Defendant Linderman, SCI-Fayette's mailroom supervisor, violated his rights under the First Amendment by opening his "legal mail" from Victor outside of his presence on four occasions and that Defendant Coleman is liable in his supervisory capacity for knowing about and acquiescing in this misconduct. Defendants have moved for summary judgment on the basis that Plaintiff's correspondence from Victor was not entitled to the same First Amendment protections accorded to legal mail, or, alternatively, that the four instances where his mail was opened outside of his presence were isolated incidents that did not amount to a violation of the First Amendment. Because the Court should grant summary judgment on the first ground, the undersigned will refrain from addressing the second.

It is well established that, pursuant to the First Amendment, prisoner legal mail may not be opened for inspections for contraband except in the presence of the prisoner. Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); *see also* Jones v. Brown, 461 F.3d 353, 355 (3d Cir. 2006) (holding that "state prisoners have an interest protected by the First Amendment in being present when their incoming legal mail is opened"); Bieregu v. Reno, 59 F.3d 1445, 1458 (3d Cir. 1995). Thus, the definition of "legal mail," and whether Victor's correspondence to Plaintiff qualified as such, is crucial to the outcome of this case.

As an initial matter, the law seems to be clear that "legal mail" includes properly marked incoming attorney or court mail. *See* Fontroy v. Beard, 559 F.3d 173, 174 n.1 (3d Cir. 2009) ("For the purposes of this opinion, we use the term 'legal mail' to refer to incoming attorney and court mail, collectively.") Bieregu, 59 F.3d at 1449 (using the phrase "legal mail" as a general term to encompass both "attorney mail" as correspondence between an inmate and an attorney and "court mail" as correspondence between an inmate and a state or federal judge, clerk's office

or other courthouse address). Thus, the question, although not clearly defined by Plaintiff, is whether Victor's correspondence to Plaintiff qualifies as "legal mail" given Victor's *pro se* status in <u>Victor v. Lawler, *et al*</u>. No. 3:08-cv-1374 (M.D. Pa.), and that court's permission for him to correspond with his witnesses, including Plaintiff, concerning matters in that case.

To begin with, Defendants assert that this case involves nothing more than inmate-to-inmate correspondence, which has never been afforded the same protections given to legal mail under the First Amendment. In this regard, the United States Supreme Court has held that a prison ban on inmate-to-inmate correspondence does not impinge on inmates' constitutional rights because such regulation is reasonably related to legitimate penological interests. *See* <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); *see also* <u>Nasir v. Morgan</u>, 350 F.3d 366, 369 (3d Cir. 2003) (finding that Pennsylvania Department of Corrections Policy Statement DC-ADM 803 does not violate the First Amendment under <u>Turner</u>). It has also held that inmate-to-inmate correspondence that includes legal assistance does not receive any more constitutional protection than correspondence between inmates without any legal assistance. *See* <u>Shaw v. Murphy</u>, 532 U.S. 223, 228 (2001); *see e.g.*, <u>Munn v. Phillips</u>, 2010 WL 729015, at *4 (W.D. Ark. Mar. 1, 2010) (involving an inmate purporting to provide legal assistance to another inmate). Federal courts have held this is true even when the inmates involved are co-plaintiffs in a civil suit. *See* <u>Ybanez v. Milyard</u>, 2011 WL 4383123, at *6 (D. Colo. Sept. 20, 2011) (citing <u>Stine v. Collins</u>, 2008 WL 596807, at *1 (D. Colo. Mar. 4, 2008) and <u>Shaw</u>, 532 U.S. at 228))

To whatever extent, if any, Plaintiff attempts to distinguish this case on the basis that Victor was acting as his own attorney, and, therefore, the communication between them was privileged, his argument holds no water. Victor was acting as *his* own attorney in *his* own legal matter; not an attorney for Plaintiff. As Defendants correctly point out, there was no legal

17

relationship between Victor and Plaintiff any more than there would be a legal relationship between an attorney and the witnesses he might contact or subpoena to help prove his case. While Plaintiff and Victor were granted the "privilege" to correspond with one another by the District Court in the Middle District of Pennsylvania and the Pennsylvania Department of Corrections, their communication was not privileged correspondence simply due to Victor's *pro se* status or otherwise.

Moreover, this case is substantially equivalent to <u>Shaw</u>. The plaintiff in <u>Shaw</u> was a trained inmate law clerk who had offered, *via* letter, to provide legal assistance to a fellow inmate charged with assaulting a prison guard. The letter was intercepted and read by prison officials who sanctioned the plaintiff, on the basis of the letter's content, for violating prison rules. The plaintiff brought suit alleging a violation of the First Amendment to provide legal assistance to fellow inmates. The Supreme Court noted the question before it was not whether the restriction on inmate-to-inmate communications found constitutional in <u>Turner</u> should be limited to only non-legal correspondence, but whether <u>Turner</u> permits an increase in constitutional protection whenever a prisoner provides legal advice. <u>Shaw</u>, 532 U.S. at 228. However, it stated that "[t]he effect of such a right . . . would be that inmate-to-inmate correspondence that includes legal assistance would receive more First Amendment protection than correspondence without any legal assistance." <u>Id</u>. It reasoned that <u>Turner</u> did not accommodate valuations of content because if courts were to enhance constitutional protection based on their assessment of the content of the particular communications, they "would be in a position to assume a greater role in decisions affecting prison administration." <u>Id</u>. at 230.

There is no arguable basis in law or in fact to reasonably distinguish the communications at issue here from the communication at issue in <u>Shaw</u>. Both communications concerned matters

legal in nature; and, despite the fact that one prisoner was seeking legal assistance while the other was offering to provide it, this is a distinction without a difference. The very fact that Victor was representing himself in his own legal matter and had been granted permission to correspond with Plaintiff does not change the analysis and accord his correspondence any more constitutional protection than that of the prisoner in <u>Shaw</u>. The undersigned has found no precedent, or any case for that matter, wherein correspondence from an inmate acting under *pro se* status in a legal matter is afforded the same constitutional protections as that afforded to legal mail even when the correspondence concerns matters related to that *pro se* inmate's legal matter. As the Third Circuit emphasized in <u>Shaw</u>, to distinguish such correspondence based on its content would place an undue burden on staff and put federal courts in a position where they would effectively be interfering with the daily operations of the prisons; the very issue the Supreme Court sought to avoid in <u>Turner</u>. Accordingly, the undersigned is not persuaded that Victor's correspondence qualified as "legal mail" as that term is contemplated by the First Amendment.

Plaintiff also argues that because the court in <u>Victor v. Lawler</u>, No. 3:08-cv-1374 granted Victor permission to correspond with him and other inmate witnesses, his correspondence from Victor qualified as "legal mail." However, there is nothing in the court's orders indicating that such correspondence was to be treated as legal or privileged mail for the purpose of the First Amendment, and, in fact, specifically stated that the communications were "subject to monitoring according to normal security procedures by the Department of Corrections." Therefore, this argument is without merit.

Finally, Plaintiff argues that because the DOC treated his correspondence from Victor as "legal mail" then Defendants violated his First Amendment rights by opening it outside of his

presence.  Defendants do admit that, at least at one point in time, Plaintiff was advised that his correspondence from Victor would be considered and treated as "legal mail" by the DOC. Nevertheless, they are correct that this pronouncement did not cloak the correspondence with the constitutional protections afforded to legal mail that would not otherwise exist under the law. Defendants have cited to <u>Schenck v. Wood</u>, 1996 WL 190814 (E.D. Wash. Jan. 29, 1996), in support of their position and the undersigned agrees that, although not binding, it is factually similar and equally applicable here.  In <u>Schenck</u>, the plaintiff claimed that his mail to and from a fellow inmate co-plaintiff was opened outside of his presence on numerous occasions despite the fact that he had obtained authorization from the Superintendent to invoke legal mail status as to his correspondence.  While the court was unable to find any case law where mail between inmates, regardless of its "legal" nature, had been accorded the protections given to legal mail under the First Amendment, it nonetheless stated that "[t]he Superintendent's discretionary authorization under DOP policy [to confer legal mail status] is not tantamount to a conferring of constitutional protection on such correspondence" given that "DOC policy does not create a constitutionally protected liberty or property interest in inmates having such correspondence inspected only in their presence."  <u>Id</u>. at *11.  Much like <u>Shaw</u>, there is no legal or factual basis by which to distinguish <u>Schenck</u> from the instant matter.  The DOC's definition of "legal" or "privileged" mail does not include inmate-to-inmate correspondence, even if that correspondence is legal in nature; and, despite the DOC's periodic treatment of Plaintiff's correspondence as such, no First Amendment right was created to require such correspondence to be opened in his presence.  For these reasons, Defendants should be granted summary judgment and there is no need to engage in an analysis of whether such a constitutional violation occurred when Plaintiff's correspondence was opened outside of his presence on the four occasions at issue.

## III.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment (ECF No. 41) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated:  June 17, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge


cc:  Kareem Armstrong
     FC1437
     SCI Smithfield
     P.O. Box 999
     1120 Pike Street
     Huntingdon, PA  16652
     *Via First Class U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*